IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| CAROL SCARLETT )<br>1417 Ginger Lane )<br>Naperville, IL 60565, )<br>  )<br>          Plaintiff, )<br>  )<br>v.   )<br>  )<br>  )<br>OFFICE OF INSPECTOR GENERAL )<br>2415 Eisenhower Avenue )<br>Alexandria, Virginia 22314, )<br>  )<br>          Defendant. )<br>  ) | Civil Action<br><br>Case: 1:22−cv−00188 JURY DEMAND<br>Assigned To : Howell, Beryl A.<br>Assign. Date : 1/20/2022<br>Description: Pro Se Gen. Civ. (F−DECK) |

**COMPLAINT**

Plaintiff Dr. Carol Scarlett brings this action against the Office of Inspector General at the National Science Foundation (OIG-NSF) to seek relief for Whistleblower Retaliation (see https://www.nsf.gov/bfa/dias/policy/outreach/grantsconf/oig_june14.pdf and https://oig.justice.gov/hotline/whistleblower-protection) – see also 4712 U.S. Code for congressional expansion of WPA) and breach of contract. As grounds therefore, Plaintiff alleges as follows:

**JURISDICTION AND VENUE**

1. The Court has jurisdiction over this action pursuant to 4712 U.S. Code for congressional expansion of WPA being brought against a Federal Agency.

2. Venue is proper in this district pursuant to 4712 U.S. Code for congressional expansion of WPA as Plaintiff has already shown proper venue in previous case (see Civil Action 21-819 RDM).

**PARTIES**

3. Plaintiff, who complained of being denied equal access as a small business owner to the Small Business Innovation Research (SBIR) Phase II program, was retaliated against by having had a false complaint filed with the National Science Foundation's (NSF's) Office of Inspector General (OIG) and by subsequently being told by the OIG that she was held under a contract requiring work without pay in breach of the original grant conditions and federal laws.

4. Defendant is an agency of the United States Government and is headquartered at 2415 Eisenhower Avenue, Alexandria, Virginia. Defendant has possession, custody, and control of records to which Plaintiff seeks access.

## FACTS OF THE OCCURANCE

5. On September 26, 2017, Plaintiff was, according to investigator at the National Science Foundation's (NSF's) Office of Inspector General (OIG), given a contract to continue work on an NSF project expected to operate an additional three months beyond the initial end date and to conduct research beyond the initial scope of work – ***NOTE: Plaintiff was unaware of a "new contract," which according to OIG was to be billed against the previous grant which had no funds to cover the costs of the new work, until she spoke with the OIG in January 27th, 2021 and received further communications on November 3rd, 2021.***

6. NSF was aware that the extension period would involve work beyond the initial scope of work and thus required additional funds for any "contract" to be effective.

7. On March 2, 2018 while filing for a second phase of work, Plaintiff was given enhanced criteria by an NSF externally hired CPA Firm, Plaintiff was told to have twenty-four times (24x) the stated NSF criteria for financial liquidity, to qualify for a federal grant in

violation of federal criteria governing grants (see Exhibit 1_AT_Legal-Email-Zoschke).

8. On March 9, 2018 Mr. Aaron Rhodenbaug, a CPA at the same NSF externally hired CPA Firm, emailed a Project Lead, Mr. Sohel Ahmed, at NSF's Cost Analysis and Audit Resolution (CAAR) Office making materially false statements that he would later retract and that contradicted the report submitted to NSF by the externally hired CPA firm (see Exhibit 2_AT_Legal-Email-Rhodenb and 3_AT_Legal-Email-RodenbSohel).

9. On April 2, 2018, Plaintiff and her small business, Axion Technologies, LLC, were denied a SBIR Phase II grant based on non-NSF criteria.

10. On April 2, 2018, Plaintiff spoke with a representative from the Division of Grants and Agreements (DGA) where Plaintiff learned that a report from the Cost Analysis and Audit Resolution (CAAR) office submitted by Mr. Ahmed provided false information regarding the interim financial statements for the Plaintiff's small business – which were to be used in evaluating the Plaintiff's small business in accordance with NSF Policies & Procedures Handbook (see Exhibit 4_AT_Legal-Email-SohelRpt).

11. On April 3, 2018, a Branch Chief for the CAAR Office, Mr. Charles Ziegler, emailed Program Managers at NSF telling them "Before everyone gets in an uproar over this decile recommendation let me explain my position…" (see Exhibit 5_At_Legal-Email-Ziegler).

12. Thus Mr. Ziegler's documents criticism of the CAAR Office's handling of the Plaintiff's application – in addition to the Plaintiff's criticisms of criteria enhancements.

13. On April 5, 2018 a complaint against the Plaintiff was filed with the Office of Inspector General (OIG) alleging unknown wrong doings on the part of the Plaintiff or Plaintiff's Small Business, for which the Plaintiff is currently seeking information (see Civil Case 21-819 RDM in DC Federal Court).

14. The complaint violates Whistleblower protections afforded to the Plaintiff under NSF OIG and DOJ stated policies: "All [NSF/DOJ] employees, contractors, subcontractors, **_grantees,_** subgrantees, and personal services contractors are protected from retaliation for making a protected disclosure" see https://www.nsf.gov/bfa/dias/policy/outreach/grantsconf/oig_june14.pdf and https://oig.justice.gov/hotline/whistleblower-protection) – see also 4712 U.S. Code for congressional expansion of WPA

15. Note: based on FOIA documents released by NSF FOIA Office as of March 2019, there were no specific allegations of wrong doing, requiring OIG involvement, documented in either the report to DGA nor in any of the records to or from the externally hired CPA firm nor in relation to the additional contract Plaintiff was allegedly given as of September 26, 2017 (the latter is according to the OIG).

16. On April 6, 2018 the Branch Chief (see §10 above) from the National Science Foundation (NSF) spoke by phone with the Plaintiff and suggested that the Plaintiff move twenty-four times (24x) the company's one-month burn to a liquid, business account and file new financial paperwork, before submitting an appeal of the declined proposal (see Exhibit 15_AT_Legal-CYS-Affidavit2).

17. Plaintiff, who was first given enhanced grant criteria (see Exhibit 1_AT_Legal-Email-Zoschke) in violation of federal laws laid out in the Code of Federal Regulations (CFR 200.100 and 200.203), has been harmed by actions of individuals responsible for the processing of applications to federal grant programs.

18. Plaintiff is currently involved in litigation against Mr. Rhodenbaug, who was one of only three people who had access to Plaintiff's financial records and who promoted

enhanced grant criteria when evaluating Plaintiff's application.

19. Plaintiff has complained that Mr. Rhodenbaug made reckless and false claims about the Plaintiff's business financial practices (see Exhibits 2_AT_Legal-Email-Rodenb and 3_AT_Legal-Email-RodenbSohel).

20. A second individual who had access to Plaintiff's records was NSF's Officer from the Cost Analysis and Audit Resolution (CAAR) Office, Mr. Sohel Ahmed, also participated in promoting enhanced grant criteria beyond what is allowed by NSF policies and federal laws governing grants (see CFR 200.100 and 200.203 and Exhibit 3_AT_Legal-Email-RodenbSohel) and even issued a report to another NSF Branch Office that knowingly overlooked NSF's requirement to use interim statements when evaluating financial viability (see Exhibit 4_AT_Legal-Email-SohelRpt) of applicants.

21. A third NSF Official, Branch Chief Charles Ziegler, was involved in the financial review process and providing enhancement of grant criteria.

22. Following decline of Plaintiff's proposal on/around April 2nd, 2018, Plaintiff sought explanation from several division heads at NSF which lead to some of those individuals questioning the NSF Officials involved in Plaintiff's review process (see Exhibit 5_AT_Legal-Email-Ziegler).

23. Branch Chief Ziegler, one of only three people with both access to Plaintiff's financial records and who participated in enhancing NSF grant criteria, told Plaintiff on April 6th, 2021 to make a large deposit to a business account ($130,000) and to file all new financial records in violation of NSF policies for filing financial records just one day after an OIG complaint had been filed against Plaintiff.

24. On June 20, 2018 Plaintiff received subpoena from NSF OIG requesting company's financial records.

25. On March 14, 2019 Plaintiff received documents from a FOIA request to the National Science Foundation (NSF) showing that both the Branch Chief (see §23 above) as well as a Project Lead (see §20 above) at the CAAR Officer received communications from an externally hired CPA after which the CAAR Officer, Mr. Ahmed, suggested that the CPA report evaluating the Plaintiff's company be altered.

26. On June 2, 2020, Plaintiff contacted NSF OIG about the April 5, 2018 complaint and timeline of the follow-up subpoena. Plaintiff alleged that the complaint was filed in retaliation to issues raised over enhanced criteria given by external CPA to Plaintiff. An OIG Officer explained that the April 5, 2018 complaint was filed very shortly after Plaintiff questioned proposal decline and enhanced criteria.

27. On July 2, 2020, Plaintiff sought FOIA records to determine the nature of the original complaint filed on April 5, 2018 and its relation to Plaintiff's objections over enhanced criteria.

28. On October 8, 2020 Defendant advised that only the date of the complaint would be released, not any wording nor allegations made.

29. On November 2, 2020 Plaintiff filed appeal of decision to release only date information without allegations or other information.

30. On December 4, 2020 Defendant advised that pending an OIG investigation these records would not be released.

31. On January 27, 2021 Plaintiff had a voluntary interview with OIG, during which Plaintiff learned that in addition to the enhanced criteria, Plaintiff was given a contract on September 26, 2017 which violated federal contract and labor laws, and may have been a "bad faith" negotiation.

32. On February 28, 2021 Plaintiff filed a response to FOIA Office's decline to

comply with request for original complaint, explaining that the OIG interview on January 27, 2021 had identified a new issue (potential "bad faith" contracting) that made the original complaint likely a retaliation against a whistleblower (the Plaintiff) for raising issues of process (enhanced criteria or bad faith contracting) – a violation of Federal Laws.

33.     As of the date of this complaint, Defendant has failed to: (1) determine whether to comply with the FOIA request; (2) notify Plaintiff of such determination or the reasons therefor; (3) cease and desist from engaging in whistleblower retaliation; or (4) provide the records relevant to the new contract described by OIG.

## STATEMENT OF COMPLAINT

34.     Plaintiff claims that the Defendant engaged in both retaliatory behavior as well as bad faith contracting.  Plaintiff provides to the court a timeline to support a causal connection between the filing of an OIG complaint against the Plaintiff and Plaintiff's protected disclosure of illegally enhanced criteria for receiving federal grants – see Exhibits 6_AT_Legal-DepoCPA-NSFCrit-082120 and 2_AT_Legal-Aff-Non-Criteria for details on grant criteria enhancement.

35.     Plaintiff further presents a timeline showing that Defendant was aware of protected disclosures made by the Plaintiff first to NSF on April 2nd through the 5th of 2018 (see Exhibits 8_AT_Legal-Email-Atherton-040218, 9_AT_Legal-Email-PhanAtheton-040318 and 10_AT_Legal-Email-Wynnyk-040518) and later directly to the Defendant on if not prior to June 3rd of 2018 (see Exhibit 11_AT_Legal-Email-Wallace-060318) and again on/around June 21st, 2018 (see Exhibit 12_AT_Legal-Email-Weir-062118).

36.     In Vernace v. Port Authority Trans-Hudson Corp., ARB No. 12-003, ALJ No. 2010-FRS-018 (ARB Dec. 21, 2012), it was ruled that any action that would dissuade a reasonable person from engaging in protected disclosures is a violation of whistleblower protections:

> ***Dissuading a Reasonable Person:*** One month after Plaintiff filed an OIG

complaint, making protected disclosures (see Exhibit 11_AT_Legal-Email-Wallace-060318), and about a week after she gave an interview to an OIG Special Agent investigating her complaint (Exhibit 12_AT_Legal-Email-Weir-062118), she received a subpoena for her company's financial and all personnel records.  In the weeks that Plaintiff rushed to gather information, she was informed that she would not be given any secure links (Exhibit 13_AT_Legal-Email-Amores-081118), but would have to send personnel records via email and some records she had to rush to the Post Office to overnight.  No reasonable person would not feel harassed, threatened and intimidated by the aggressive, draconian tactics used against the Plaintiff.  No reasonable person wants to hear that their electronic records could be compromised, but not cooperating would be perceived far worse.

Thus the Defendant's actions (adverse actions by Defendant explicitly began on June 29th, 2018 see Exhibit 14_AT_Legal-Email-Amores-062918) in expanding an investigation into the Plaintiff meets the criteria of dissuading a "reasonable person," and the Defendant violated the Whistleblower Protection Act as applied by NSF to grantees:

https://www.nsf.gov/bfa/dias/policy/outreach/grantsconf/oig_june14.pdf.

37. Records before the court supports claims for Retaliation and Breach of Contract:

1. Plaintiff qualifies for whistleblower protections, defined by NSF OIG and DOJ policies:

"All [NSF/DOJ] employees, contractors, subcontractors, **_grantees,_** subgrantees, and personal services contractors are protected from retaliation for making a protected disclosure" see

https://www.nsf.gov/bfa/dias/policy/outreach/grantsconf/oig_june14.pdf and https://oig.justice.gov/hotline/whistleblower-protection) – see also 4712 U.S. Code for congressional expansion of WPA

2. Defendant was aware of protected disclosures made by Plaintiff prior to moving forward with adverse actions – see 11_AT_Legal-Email-Wallace-060318 and 12_AT_Legal-Email-Weir-062118:

  i. Plaintiff had asserted to Defendant that she was given illegally enhanced criteria (in violation of CFR 200.100 and 200.203) to receive federal funding under a Small Business Innovative Research (SBIR) Program under the National Science Foundation (NSF) – see Exhibit 11_AT_Legal-Wallace-060318

  ii. Defendant had accepted for investigation a complaint filed by the Plaintiff, on June 3rd, 2018, in which she laid out the timeline for the enhancement of grant criteria as well as bullying tactics to force Plaintiff to be a guarantor of a grant (pressured to move $130,000, that was never required, to a business account) by individuals at the NSF

  iii. Defendant had assigned an investigator to Plaintiff's complaint and an interview between that investigator and Plaintiff took place on/around June 21st, 2018,

  iv. Approximately one weeks after Plaintiff gave an interview regarding her own complaint of illegal actions by individuals at the NSF CAAR Office, on/around June 29th, 2018, Defendant had an investigatory team subpoena Plaintiff's financial records

  v. Investigators in charge of investigating the April 5th, 2018 complaint made against Plaintiff or Plaintiff's Small Business, expressed their intent on securing by subpoena all of Plaintiff's records, even without affording Plaintiff typical means of supplying records – through

        secured communications link system accellion dropbox (see Exhibit 13_AT_Legal-Email-Amores-081118 – dates of July 23rd, 2018, August 11th, 2018 and even during an interview on January 27th, 2021)

vi.    The Investigators pursuing the Plaintiff, even requested records not related to the grant and continued a back-and-forth process for several months (see Exhibit 17_AT_Legal-Email-Stokes-100418) – thus adding to violations of privacy not related to any federal funds and producing unnecessary stress on the Plaintiff

vii.    ***The timeline of events supports Plaintiff's count of Retaliation*** by the Defendant and do not require the court to make inferences about the nature of the retaliatory actions taken by Defendant

viii.    During an interview with investigators working on the April 5th, 2018 complaint filed against the Plaintiff or Plaintiff's Small Business (January 27th, 2021), the investigator for the Defendant attempted to apply non-contractual language to the Plaintiff's previous grant award (see Exhibit 18_AT_Legal-InterviewPenn-012721 – exert from interview on January 27th, 2021) – ***Supporting Plaintiff's count for Breach of Contract***

3. Defendant was required to honor whistleblower protection and NSF Policies & Procedure Handbook Contractual obligations by not taking any averse actions that could deter a reasonable person from making protected disclosures as a test of "retaliation"

4. Defendant's own investigatory process commencing approximately one week after Plaintiff gave an interview where she alleged illegal enhancement of grant criteria serves as a significant deterrent and thus qualifies as a "retaliation" against a whistleblower

38.    Plaintiff has shown "the 'circumstances, occurrences and events' that support the claim (Retaliation and Breach of Contract) for relief" (Twombly, 550 U.S. at 555 n.3)

39.    Plaintiff accepts that on Count II (Breach of Contract) there are limitations to damages that can be claimed in the current venue. Plaintiff was unable to collect $36,179.60 in overtime plus another $11,204.88 in pre-award time for a total of $47,384.48 from the original grant nor did she collect the associated fringe and over-head. However, Plaintiff asks for relief that Court can provide to this count and is willing to accept the lower amount of $10,000.

40.    With regards to damages on Count I (Retaliation), Plaintiff makes the following assertions: 1. Plaintiff lost thousands of hours over the past 3+ years due to Defendant's actions, 2. Plaintiff spent tens of thousands on attorney fees for representation due to Defendant's actions, 3. Plaintiff suffered considerable stress 4. Plaintiff's business suffered due to interruptions caused by having to divert time to defending herself against Defendant's claims and 5. **Plaintiff will think twice before "whistleblowing" after experiencing the negative financial impacts that follows.**

## PLEADING

Plaintiff hereby requests a trial by jury in the above matter.

Dated: January 19th, 2021

Respectfully submitted,

*Dr. Carol Scarlett*

Dr. Carol Scarlett
1417 Ginger Lane
Naperville, IL 60565
Telephone: 631-398-8746
cyscarlett@gmail.com

*Plaintiff*