## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

CAROL SCARLETT,

        Plaintiff,

        v.

NATIONAL SCIENCE FOUNDATION
OFFICE OF INSPECTOR GENERAL,

        Defendant.

Civil Action No. 22-cv-188 (BAH)

Chief Judge Beryl A. Howell

## <u>MEMORANDUM OPINION AND ORDER</u>

Dr. Carol Scarlett, president of Axion Technologies LLC, has initiated this *pro se* lawsuit against the Office of the Inspector General (OIG) of the National Science Foundation (NSF), claiming that NSF denied her a research grant, then engaged in a cover-up of its wrongful denial by retaliating against plaintiff and conducting a "sham investigation" when she filed a complaint. *See generally* Am. Compl., ECF No. 16.  Plaintiff alleges that NSF unlawfully applied "enhanced criteria" in denying her grant application, *see id*. ¶ 7, and, in retaliation for her criticism of NSF's decision, a "false complaint" was filed against her with the NSF OIG alleging "unknown wrong doings," *id.* ¶¶ 3, 13, violating a contractor whistleblower protection provision of the 2013 National Defense Authorization Act (NDAA), 41 U.S.C. § 4712.  After plaintiff's appeal of the grant application denial was unsuccessful, she lodged a complaint with the NSF OIG, which investigation plaintiff alleges was blighted by misconduct because of investigators' failure to pursue her allegations that she was subject to uniquely burdensome financial liquidity requirements.  *Id.* at ¶¶ 61–66.  The NSF OIG has now moved to dismiss the amended complaint, under FED. R. CIV. P. 12(b)(1), (3) and (6), for lack of subject-matter jurisdiction, improper

venue, and plaintiff's failure to allege any plausible claim.  Def.'s Mot. Dismiss or Transfer Venue ("Def.'s Mot."), ECF No. 17.

For the reasons set forth below, the plaintiff's amended complaint is dismissed.

## I.   BACKGROUND

The factual background—derived from plaintiff's *pro se* amended complaint and her other filings—and procedural history relevant to the pending motion are described below.

### A.   Factual Background

The conflict underlying plaintiff's lawsuit began on April 2, 2018, when NSF denied plaintiff's application for a Small Business Innovation Research Phase II grant, which would have extended research funding plaintiff previously received from NSF under the first phase of the grant program.  Am. Compl. ¶ 9. [1]  Plaintiff claims that NSF denied her application based on "enhanced criteria" not required of other applicants.  *Id.* ¶ 7.  Specifically, plaintiff alleges that, a month before her application was denied, an external accountant assessing her company's financial viability on behalf of NSF informed plaintiff that her business needed to have "twenty-four times . . . the stated NSF criteria for financial liquidity," with 24 times the amount of the business's monthly "burn" rate held in a liquid account.  *Id.* ¶¶ 7, 16.  She further alleges that, in denying her application, NSF failed to review her company's interim financial statements, *id.* ¶ 20, and relied on "materially false statements" about her business's financial viability made by the external accountant assigned to review her application, *id.* ¶¶ 7–8.

---

[1]     The Small Business Innovation Research Program provides seed funding for research and development work by small businesses  Typically, only those businesses that have already received a Phase I award qualify to apply for a Phase II award to continue the projects initiated in the prior phase of research.  *See* Small Business Innovation Research, *About*, https://www.sbir.gov/about (last visited December 21, 2022); NSF, America's Seed Fund, *Our Program*, https://seedfund.nsf.gov/our-program/ (last visited December 21, 2022).

In the days after plaintiff was informed that she would not receive a Phase II grant, she attempted to challenge the decision through a variety of avenues.  First, she contacted NSF officials in a series of emails and phone calls requesting that the decision be reversed.  *Id.* ¶¶ 16, 22–23; First Errata to Am. Compl., Ex. 8, April 2, 2018-dated email chain between Scarlett and NSF official, ECF No. 21-9; *id.*, Ex. 9, April 3, 2018-dated email chain between Scarlett and NSF officials, ECF No. 21-10; *id.*, Ex. 10, April 5, 2018-dated email chain between Scarlett and NSF official, ECF No. 21-11.  According to plaintiff, during a phone call on April 6, 2018, Charles Ziegler, then Branch Chief for the National Science Foundation's Cost Analysis and Audit Resolution Office, urged her to transfer $130,000 from her personal to business accounts before she appealed the application's denial in order to improve the business's liquidity.  Am. Compl. ¶¶ 16, 23; First Errata to Amended Complaint, Ex. 15, Plaintiff's Unsigned Affidavit, ECF No. 21-16.  Plaintiff appears to have appealed NSF's decision within a week of receiving it, *see* Pl.'s Resp. Def.'s Mot. Dismiss or Transfer Venue ("Pl.'s Opp'n"), Ex. 1 at 13, 47, June 21, 2018-dated NSF OIG Interview of Scarlett Tr., ECF No. 18-1, which appeal appears to have been denied at some point before June 3, 2018, *see* First Errata to Am. Compl., Ex. 11, June 3, 2018-dated email from Scarlett to NSF official, ECF No. 21-12.  Plaintiff then filed, on June 3, 2018, a complaint with NSF OIG, alleging misconduct in NSF's consideration of her grant application, causing an OIG investigation to be opened that included June 2018 and December 2018 interviews of plaintiff and the external accountant, respectively.  Am. Compl. ¶¶ 34–36; Errata to Am. Compl., Ex. 11.  NSF OIG informed plaintiff on September 11, 2019 that it closed its investigation into her complaint, finding "no evidence to support the allegations made."  Pl.'s Opp'n, Ex. 1 at 69, Sept. 11, 2019-dated NSF OIG Ltr., ECF No. 18-1.

3

Plaintiff alleges that NSF OIG retaliated against her for complaining about her grant application's denial.  She appears to claim that she engaged in protected whistleblower action by seeking "explanation from several division heads at NSF," in the days after she received the decision, as well as by filing her June 3, 2018 complaint.  Am. Compl. ¶¶ 22, 55.  She asserts that NSF retaliated against her when (1) on April 5, 2018, a complaint was filed against *plaintiff* before the NSF OIG, *id*. ¶ 13, and (2) her appeal of the grant application's rejection was denied, *see* Pl.'s Opp'n at 3.  She further alleges a "causal connection between the filing of an OIG complaint against the Plaintiff" and her "protected disclosure of illegally enhanced criteria for receiving federal grants."  Am. Compl. ¶ 54.  Apparently as a part of the investigation of the claim against her, plaintiff received a subpoena for her company's financial and personnel records but was not provided a secure link with which to send those records to the investigator. *Id.* ¶ 56.

Plaintiff similarly alleges that, with regard to her June 2018 complaint about the review of her grant application, NSF OIG "conducted a sham investigation with the intent of covering up violations of federal regulation by an external contractor."  Am. Compl. ¶ 61.  Plaintiff charges that the investigators "could [have] easily disprove[n]" certain "inconsistent claims" made by the external accountant about her business, such as the claim that Scarlett's company suffered financial problems, and OIG's failure to do so constituted misconduct, *id.* ¶¶ 38–39.

Separately, plaintiff alleges that NSF OIG breached a contract with her.  She alleges that, on September 26, 2017, she was "given a contract to continue work on an NSF project expected to operate an additional three months beyond the initial end date and to conduct research beyond the initial scope of work," but that she was unaware of this contract until January 27, 2021, when she appears to have participated in an interview with NSF OIG.  Am. Compl. ¶ 5; First Errata to

Am. Compl., Ex. 18, Jan. 27, 2021-dated Scarlett Interview Tr. Excerpt, ECF No. 21-19. Plaintiff alleges this contract provided no funds to perform the additional work, and was instead "to be billed against the previous grant." Am. Compl. ¶ 5. In a January 2021 interview with NSF OIG, to which plaintiff cites in support of this claim, plaintiff described requesting and receiving an extension from NSF to submit a final report regarding her Phase I grant work in 2017. First Errata to Am. Compl., Ex. 18 at 2–7. This extension appears to be the contract that plaintiff describes as a "bad faith negotiation." Am. Compl. ¶ 31.

    **B.    Procedural Background**

    Plaintiff initiated this litigation on January 20, 2022, alleging claims of whistleblower retaliation and breach of contract against the NSF OIG. Compl., ECF No. 1.[2] In response, defendant moved to dismiss plaintiff's complaint, under Federal Rule of Civil Procedure 12(b)(1), (3) and (6), for lack of subject-matter jurisdiction, improper venue, and plaintiff's failure to allege any plausible claim, or in the alternative, to transfer venue. Def.'s First Mot. Dismiss or Transfer Venue, ECF No. 7. Plaintiff opposed the motion, *see* Pl.'s Resp. to Def.'s First Mot. to Dismiss, ECF No. 8, and defendant replied on May 20, 2022, see Def.'s Reply Supp. First Mot. Dismiss, ECF No. 9.

    The initial round of briefing on the defendant's motion to dismiss was rendered moot, however, by plaintiff's August 23, 2022 motion to amend her complaint to add a third count. Pl.'s Mot. to Add Count, ECF No. 12. In compliance with the Court's order granting plaintiff's motion, over defendant's objection, plaintiff filed an amended complaint asserting the same two counts, plus an additional count alleging "Investigator Misconduct & Obstruction" in the OIG's

---

[2]    Plaintiff brought a separate Freedom of Information Act claim against the same defendant in March 2021, seeking disclosure of the complaint regarding plaintiff or her company filed with the NSF OIG on April 5, 2018. *Scarlett v. OIG*, Case No. 21-cv-819 (RDM), Complaint, ECF No. 1. This parallel litigation remains ongoing.

investigation of her complaint regarding the review of her grant application.  Am. Compl. ¶¶ 34–

53.  Defendant again moved to dismiss or transfer venue as to the amended complaint, *see* Def.'s

Mot., which motion became ripe for resolution on October 6, 2022, *see* Def.'s Reply Supp. Mot.

Dismiss or Transfer Venue ("Def.'s Reply"), ECF No. 19.[3]  After the conclusion of the parties'

briefing, plaintiff filed two errata to her amended complaint containing the exhibits referenced in

the amended complaint, *see* First Errata to Am. Compl., ECF No. 21 and Second Errata to Am.

Compl., ECF No. 22, and in response to the Court's order urging plaintiff that the failure to

address arguments raised by defendant may result in those arguments being treated as conceded,

*see* Minute Order (Dec. 7, 2022), plaintiff filed a supplemental memorandum in support of her

opposition to the motion to dismiss.  *See* Pl.'s Suppl. Mem. Supp. Opp'n Def.'s Mot. Dismiss

("Pl.'s Suppl. Mem."), ECF No. 23.

## II.    LEGAL STANDARD

Defendant seeks to dismiss plaintiff's amended complaint under Rule 12(b)(1), (3), and

(6), for lack of subject-matter jurisdiction, improper venue, and failure to state a claim upon

which relief can be granted, respectively.  Defendant's improper venue challenge is appropriately

dealt with first as a "threshold, non-merits issue that a court can address without first establishing

its jurisdiction."  *Chevron U.S.A., Inc. v. Env't Prot. Agency*, 45 F.4th 380, 385 (D.C. Cir. 2022).

### A.    Improper Venue

To prevail on a motion to dismiss for improper venue, under Rule 12(b)(3) of the Federal

Rules of Civil Procedure, "the defendant must present facts that will defeat the plaintiff's

assertion of venue."  *See Slaby v. Holder*, 901 F.Supp.2d 129, 132 (D.D.C. 2012) (quoting

---

[3]      Plaintiff filed a "Motion for Hearing" nearly three weeks after the defendant's motion to dismiss became ripe, requesting a "status hearing" on the complaint and defendant's pending motion. *See* Pl.'s Mot. for Hr'g, ECF No. 20. This motion will be denied as moot given the resolution of defendant's motion.

*Wilson v. Obama*, 770 F. Supp. 2d 188, 190 (D.D.C. 2011)).  Nevertheless, the burden remains on the plaintiff to establish that venue is proper since it is "the plaintiff's obligation to institute the action in a permissible forum . . .."  *Williams v. GEICO Corp.,* 792 F. Supp. 2d 58, 62 (D.D.C. 2011) (quoting *Freeman v. Fallin*, 254 F. Supp. 2d 52, 56 (D.D.C. 2003)); *see also* 14D Charles Alan Wright & Arthur Miller, *Federal Practice and Procedure* § 3826 (4th ed. 2022) ("[W]hen the defendant has made a proper objection, the burden is on the plaintiff to establish that the chosen district is a proper venue.").  In reviewing such a motion, the court "accepts the plaintiff's well-pled factual allegations regarding venue as true, draws all reasonable inferences from those allegations in the plaintiff's favor and resolves any factual conflicts in the plaintiff's favor." *Wilson*, 770 F. Supp. 2d at 190 (quoting *James v. Verizon Servs. Corp.*, 639 F. Supp. 2d 9, 11 (D.D.C. 2009)).

If venue is improper, district courts are required to "dismiss, or if it be in the interest of justice, transfer" a case pursuant to the federal venue statute, 28 U.S.C. § 1406(a).  The decision whether to transfer or dismiss "rests within the sound discretion of the district court."  *Naartex Consulting Corp. v. Watt*, 722 F.2d 779, 789 (D.C. Cir. 1983).  While "[a]s a general matter, a transfer of the case is favored over a dismissal," *Murdoch v. Rosenberg & Assocs., LLC*, 875 F. Supp. 2d 6, 11 (D.D.C. 2012) (quoting *Jones v. United States*, 820 F. Supp. 2d 58, 61 (D.D.C. 2011)), dismissal is appropriate where "no court would have subject matter jurisdiction over a claim," or the plaintiff's claims have "obvious substantive problems."  *Laukus v. United States*, 691 F. Supp. 2d 119, 127 (D.D.C. 2010)).  In order to determine whether transfer would be in the interest of justice, courts may "take a 'peek at the merits'" of the plaintiff's claims. *Id.* (quoting *Phillips v. Seiter,* 173 F.3d 609, 610–11 (7th Cir. 1999)).  *See also Williams v. Wells Fargo Bank, N.A.*, 53 F. Supp. 3d 33, 38 (D.D.C. 2014) ("[D]ismissal is appropriate when transfer of

the case 'would only delay the inevitable and would not be in keeping with the Supreme Court's instruction to the lower federal courts to weed out insubstantial suits expeditiously.'" (cleaned up) (quoting *McCain v. Bank of America*, 13 F. Supp. 3d 45, 55 (D.D.C. 2014))); *Ananiev v. Wells Fargo Bank, N.A.,* 968 F. Supp. 2d 123, 132 (D.D.C. 2013) (dismissing rather than transferring case with "significant substantive problems"); *Buchanan v. Manley*, 145 F.3d 386, 389 n.6 (D.C. Cir. 1998) (no abuse of discretion for district court to dismiss rather than transfer case where there were "substantive problems" with the plaintiff's claims); *Roman-Salgado v. Holder*, 730 F. Supp. 2d 126, 131 (D.D.C. 2010) (dismissing rather than transferring case for improper venue where "it appears that the complaint in its current form would likely face dismissal without prejudice for failure to state a claim").

## B.     Lack of Subject-Matter Jurisdiction

"Article III of the Constitution prescribes that '[f]ederal courts are courts of limited subject-matter jurisdiction' and 'ha[ve] the power to decide only those cases over which Congress grants jurisdiction.'" *Bronner ex rel. Am. Stud. Ass'n v. Duggan*, 962 F.3d 596, 602 (D.C. Cir. 2020) (alterations in original) (quoting *Al-Zahrani v. Rodriguez*, 669 F.3d 315, 317 (D.C. Cir. 2012)); *see also Gunn v. Minton,* 568 U.S. 251, 256 (2013) ("'Federal courts are courts of limited jurisdiction,' possessing 'only that power authorized by Constitution and statute.'" (quoting *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994))). Absent subject-matter jurisdiction over a case, the court must dismiss it. *See Arbaugh v. Y & H Corp.*, 546 U.S. 500, 506–07 (2006) (citing *Kontrick v. Ryan*, 540 U.S. 443, 455 (2004)); FED. R. CIV. P. 12(h)(3).

To survive a motion to dismiss under Federal Rule of Civil Procedure 12(b)(1), the plaintiff bears the burden of demonstrating the court's subject-matter jurisdiction over the claim at issue. *Arpaio v. Obama*, 797 F.3d 11, 19 (D.C. Cir. 2015). When considering a motion to

dismiss under Rule 12(b)(1), the court must determine jurisdictional questions by accepting as true all uncontroverted material factual allegations contained in the complaint and "constru[ing] the complaint liberally, granting plaintiff the benefit of all inferences that can be derived from the facts alleged.'" *Hemp Indus. Ass'n v. DEA*, 36 F.4th 278, 281 (D.C. Cir. 2022) (quoting *Am. Nat'l Ins. Co. v. FDIC*, 642 F.3d 1137, 1139 (D.C. Cir. 2011) (citations omitted)).  The court need not accept inferences drawn by the plaintiff, however, if those inferences are unsupported by facts alleged in the complaint or amount merely to legal conclusions.  *Id.* at 288 (making clear that liberally construing complaint in plaintiff's favor "does not entail 'accept[ing] inferences unsupported by facts or legal conclusions cast in the form of factual allegations'" (internal quotations and citations omitted)).

### C.      Failure to State a Claim

To survive a Rule 12(b)(6) motion to dismiss, the "complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Wood v. Moss*, 572 U.S. 744, 757–58 (2014) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009)).  A claim is facially plausible when the plaintiff pleads factual content that is more than "'merely consistent with' a defendant's liability," but "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 556–57 (2007)); *see also Rudder v. Williams*, 666 F.3d 790, 794 (D.C. Cir. 2012.  In deciding a motion under Rule 12(b)(6), the court must consider the whole complaint, accepting all factual allegations in the complaint as true, even if doubtful in fact, and construe all reasonable inferences in favor of the plaintiff.  *Twombly*, 550 U.S. at 555; *see also Atchley v. AstraZeneca UK Ltd.*, 22 F.4th 204, 210 (D.C. Cir. 2022).  Courts do not, however, "accept inferences drawn by [a] plaintiff[] if such inferences are unsupported by the facts set out in the complaint." *Nurriddin v. Bolden*, 818 F.3d 751, 756 (D.C. Cir. 2016)

(alteration in original) (quoting *Kowal v. MCI Commc'ns Corp.*, 16 F.3d 1271, 1276 (D.C. Cir. 1994)).  Where a plaintiff proceeds *pro se*, courts may consider all exhibits filed by the plaintiff that "were intended to clarify the allegations in the complaint."  *Abdelfattah v. U.S. Dep't of Homeland Sec.*, 787 F.3d 524, 529 (D.C. Cir. 2015).  *See also Greenhill v. Spellings*, 482 F.3d 569, 572 (D.C. Cir. 2007) ("We have also permitted courts to consider supplemental material filed by a pro se litigant in order to clarify the precise claims being urged.").

## III.   DISCUSSION

As noted, plaintiff is seeking monetary compensation for what she alleges was "retaliatory behavior" and "bad faith contracting" on the part of the NSF OIG.  Am. Compl. ¶ 54. Based on plaintiff's future intention to move to Washington, D.C., and her ongoing Freedom of Information Act lawsuit against the NSF OIG for the disclosure of records about the April 2018 complaint filed against her, *see Scarlett v. Office of Inspector General*, Case No. 21-cv-819 (RDM), plaintiff has filed her instant lawsuit in the District of Columbia.  Am. Compl. ¶ 2; Pl.'s Opp'n at 7.  As explained below, defendant is correct that this jurisdiction is not the proper venue for this action and further finds that dismissal, rather than transfer, is appropriate.  No other federal court has subject-matter jurisdiction over plaintiff's Counts One and Three, and Count Two fails to state a claim for relief.

### A.   Venue is Improper in the District of Columbia

The applicable venue statute, 28 U.S.C. § 1391(e), provides three bases for venue in lawsuits against federal agencies.  First, venue is proper in any judicial district in which defendant resides.  28 U.S.C. § 1391(e)(1)(A).  Defendant is located in Alexandria, Virginia, where NSF is headquartered.  *See* Def.'s Mem. Supp. Mot. Dismiss or Transfer Venue ("Def.'s Mem."), ECF No. 17-1.  Second, venue is proper where "a substantial part of the events or omissions giving rise to the claim occurred."  28 U.S.C. § 1391(e)(1)(B).  Defendant urges that

the relevant conduct giving rise to plaintiff's claims was her Tallahassee, Florida-based performance of the Phase I grant awarded by NSF, which performance was later investigated by OIG for misconduct.  Def.'s Mem. at 25–26.  Plaintiff's claims, however, largely turn on her allegations of misconduct committed by the NSF OIG in investigating complaints submitted both by and about plaintiff.  Third, venue is proper where "plaintiff resides if no real property is involved in the action."  28 U.S.C. § 1391(e)(1)(C).  Plaintiff resides in the Northern District of Illinois.  Pl.'s Opp'n at 7.  The lack of proper venue for this case in the District of Columbia is plain, because none of the three bases for venue are met.  Rather, the first two bases for venue point in the same direction: the Eastern District of Virginia.

Plaintiff nonetheless asserts that venue is proper in the District of Columbia.  First, plaintiff cites 5 U.S.C. § 552(a)(4)(B), which gives the District Court of the District of Columbia jurisdiction over claims filed under the Freedom of Information Act.  Pl.'s Opp'n at 7.  That statute is not relevant to plaintiff's claims in the instant action and fails to provide this Court with jurisdiction.  Second,  plaintiff argues that she intends to relocate to the District of Columbia, but has been delayed as a result of the denial of plaintiff's grant application.  Pl.'s Suppl. Mem. at 3. The venue statute, however, does not contemplate jurisdiction in which plaintiff intends to reside—only where "plaintiff resides."  28 U.S.C. § 1391(e)(1)(C).

**B.      Dismissal Rather than Transfer is Appropriate**

Review of the plaintiff's claims demonstrates "significant substantive problems" such that transfer to the Eastern District of Virginia, where defendant resides and a substantial part of the events giving rise to the claims occurred, would not be in the interest of justice.  *Ananiev*, 968 F. Supp. 2d at 132.  Plaintiff's Counts One and Three fail for federal courts' lack of subject-matter jurisdiction as a result of the absence of any waiver of sovereign immunity.  Count Two

fails to state a claim of breach of contract by defendant NSF OIG, as opposed to the agency as a whole.

### 1.    *Lack of Subject-Matter Jurisdiction*

No federal court has subject-matter jurisdiction over plaintiff's Counts One and Three because the federal government has not waived sovereign immunity as to either claim.  As to Count One, plaintiff alleges that NSF OIG violated the whistleblower protection provision for employees of government contractors under the NDAA, 41 U.S.C. § 4712, by retaliating against her for reporting alleged misconduct by NSF staff in denying her grant application.  Am. Compl. ¶¶ 14, 54–55.[4]  As to Count Three, plaintiff alleges, without referencing a statutory or common law cause of action, that NSF conducted a "sham investigation" of plaintiff's complaint.  Am. Compl. ¶¶ 61–71.  In light of plaintiff's *pro se* status,  which requires her pleadings to be "liberally construed," *Abdelfattah*, 787 F. 3d at 533 (quoting *Erickson v. Pardus*, 551 U.S. 89, 94 (2007)), the factual allegations underlying both counts are also considered as potential claims under the Federal Torts Claims Act (FTCA).  *See* Def.'s Mem. at 20 (treating Count Three as a claim pursuant to the FTCA).

---

[4]    Plaintiff appears to contend in her opposition to defendant's motion to dismiss that her Count One claim was brought under the Federal Torts Claims Act (FTCA) rather than NDAA.  Pl.'s Opp'n at 1–2, 7 ("Plaintiff has a right to seek relief under the FTCA and WPA").  *See also* Pl.'s Suppl. Mem. 6–7 (denying that 41 U.S.C. § 4712 is the basis for her claim, arguing that the statute "serves as evidence of investigatory misconduct" instead).  In the plaintiff's supplemental memorandum, she also newly asserts that her claims are rooted in the False Claims Act, because of the NSF OIG's "failure to stop waste, fraud and abuse the job for which the US employs the investigators and investigative attorneys working with the NSF OIG."  Pl.'s Suppl. Mem. at 4.  Of course, plaintiff's late-fashioned claim is not contemplated by the False Claims Act, *see* 31 U.S.C. § 3729(a)(1), because the NSF OIG's alleged conduct—"allowing US companies to be negatively impacted by unethical enhancement of criteria" and retaliating against plaintiff, *see* Pl.'s Suppl. Mem. at 4—simply does not constitute "knowingly present[ing] . . . a false or fraudulent claim for payment or approval," and, obviously, the NSF OIG, as an investigatory body, does not "request or demand . . . money or property" from the United States in connection with grant requests, 31 U.S.C. § 3729(b)(2).  In any event, plaintiff offers only "threadbare recitals . . . supported by mere conclusory statements," *Iqbal*, 556 U.S. at 663, in support of her claim that the NSF OIG itself engaged in fraud against the United States government in its handling of plaintiff's complaint, which fails to state a plausible claim.

Sovereign immunity shields the federal government and its agencies from suit and is "jurisdictional in nature." *Am. Road & Transp. Builders Ass'n v. EPA*, 865 F.Supp.2d 72, 79 (D.D.C. 2012) (quoting *FDIC v. Meyer*, 510 U.S. 471, 475 (1994)) (other citations omitted). The government may waive immunity, but such a waiver "must be unequivocally expressed in statutory text . . . and will not be implied." *Lane v. Pena*, 518 U.S. 187, 192 (1996) (citations omitted).  "If sovereign immunity has not been waived, a claim is subject to dismissal under Rule 12(b)(1) for lack of subject matter jurisdiction." *Clayton v. Dist. of Columbia*, 931 F. Supp. 2d 192, 200 (D.D.C. 2013) (citing *Meyer*, 510 U.S. at 475).  The plaintiff bears the burden "of establishing both the court's statutory jurisdiction and the government's waiver of its sovereign immunity." *Am. Road & Transp. Builders Ass'n*, 865 F. Supp. 2d at 80 (citations omitted).

The pleaded cause of action for Count One, under the NDAA, 41 U.S.C. § 4712, does not waive sovereign immunity.  The statute protects employees of government contractors who report misconduct related to federal contracts.  *See* 41 U.S.C. § 4712(a)(1); *see also Fuerst v. Housing Auth. of Atlanta*, 38 F.4th 860, 863, 869–70 (11th Cir. 2022) (holding that 41 U.S.C. § 4712 protects employees of federal grant recipients).  An employee who files such a report and who then experiences retaliation may, after exhausting administrative remedies, sue the contractor.  *Id.* § 4712(c)(2).  The statute does not, however, provide for lawsuits against the federal government itself—let alone explicitly waive sovereign immunity for certain claims against the federal government.  *Id.* (providing that, after exhausting all administrative remedies, a complainant "may bring a de novo action at law or equity against the contractor, subcontractor, grantee, or subgrantee").

Nor does the FTCA waive sovereign immunity as to either of plaintiff's claims under Counts One and Three.[5]  The FTCA is a "limited waiver of the Government's sovereign immunity," permitting plaintiffs to "sue the United States in federal court for state-law torts committed by government employees within the scope of their employment." *Harbury v. Hayden*, 522 F.3d 413, 416 (D.C. Cir. 2008) (citing 28 U.S.C. §§ 1346(b), 2671–80).  At the same time, "[t]he FTCA bars claimants from bringing suit in federal court until they have exhausted their administrative remedies." *McNeil v. United States*, 508 U.S. 106, 113 (1993) (declining to excuse a *pro se* plaintiff's failure to meet the exhaustion requirement).  Pursuant to this requirement, a plaintiff must first "present[] the claim to the appropriate Federal agency," and receive a final denial in writing.  28 U.S.C. § 2675(a).  *See also Simpkins v. D.C. Gov't*, 108 F.3d 366, 371 (D.C. Cir. 1997) (holding that, when a plaintiff failed to exhaust administrative remedies, the district court "lacked subject matter jurisdiction, or if not jurisdiction, the functional equivalent of it").

In this matter, plaintiff filed a complaint regarding the denial of her grant application with the NSF OIG on June 3, 2018, but there is no indication that the complaint alleged any retaliatory actions by NSF OIG as a result of plaintiff's allegations that her application was wrongfully denied, as plaintiff now alleges in Count One.  *See* Pl.'s Opp'n, Ex. 1 at 1–9, Memorandum of Investigation, ECF No. 18-1 (describing OIG's investigation into plaintiff's complaint).  Nor has plaintiff alleged that she submitted any administrative claim with NSF OIG to put the office on notice that she would allege misconduct by the investigators who were

---

[5]     Defendant rightly notes that claims under the FTCA must be brought against the United States, and defendant therefore argues that plaintiff's claims as construed under the FTCA fail because plaintiff sued solely the NSF OIG.  Def.'s Mem. at 21.  Courts have declined to hold that *pro se* plaintiffs' failure to name the correct defendant is fatal, however, even substituting the correct defendant *sua sponte*. *Abale Gnalega v. Wash. DC Veterans Med. Ctr.*, 2018 WL 6433911, *1 n.2 (D.D.C. Dec. 7, 2018) (treating a *pro se* action under the FTCA as if it were filed against the United States); *Adeyemi v. Jones*, 2005 WL 1017859, *2 (D.D.C. April 28, 2005) (same) (citing *Haines v. Kerner*, 404 U.S. 519, 520–21 (1972)).

assigned to her complaint.  Am. Compl. ¶¶ 34–53.  *See Grant v. Sec., U.S. Dep't of Veterans Affs.*, 2004 WL 287125, *1 (D.C. Cir. 2004) (per curiam) ("To satisfy the FTCA's exhaustion requirement, an administrative claim must describe the alleged injury with sufficient particularity to allow the agency to investigate and assess the strength of the claim. . . . The claim must also set forth a 'sum certain' of damages so that the agency may make an informed decision whether to attempt settlement negotiations.")  As a result, even liberally construing plaintiff's Counts One and Three as claims under the FTCA, her failure to exhaust these claims administratively means that federal courts lack subject-matter jurisdiction over them.

### C.      Failure to State a Claim

Count Two alleges that NSF OIG breached a contract with plaintiff, but this fails to state a claim.  As factual support for this claim, plaintiff alleges she was "given a contract to continue work on an NSF project expected to operate an additional three months beyond the initial end date," Am. Compl. ¶¶ 5–6, for which additional funds were not provided, constituting a violation of "federal contract and labor laws," *id*. ¶ 31.  Plaintiff further elaborated that "an investigator for the Defendant . . . attempted to retroactively alter language in a prior contract between Plaintiff and NSF,"  Pl.'s Opp'n at 11, citing an interview with an unidentified questioner in which plaintiff described asking for an extension from NSF to submit a final report for her Phase I research grant,  *see* First Errata to Am. Compl., Ex. 18 at 1–7.  She reasons that, because NSF OIG "attempted to illegally hold Plaintiff to an unwritten contract with NSF . . . NSF OIG has entered into a contract with the Plaintiff."  Pl.'s Suppl. Mem. at 9.

As defendant argues, even construing plaintiff's allegations liberally in light of her *pro se* status, plaintiff has failed to allege both that she entered a contract with the NSF OIG and that the latter breached any obligation to her as a result of such a contract.  *See Red Lake Band of Chippewa Indians v. U.S. Dep't of Interior*, 624 F. Supp. 2d 1, 12 (D.D.C. 2009) ("[A]s to the

elements of a breach of contract claim under federal law, 'a party must allege and establish: (1) a valid contract between the parties; (2) an obligation or duty arising out of the contract; (3) a breach of that duty; and (4) damages caused by the breach.'" (quoting *Pryor v. United States*, 85 Fed. Cl. 97, 104 (Fed. Cl. 2008))).  Plaintiff alleges that NSF OIG somehow entered a new oral contract with plaintiff by attempting to enforce an already existing contract between plaintiff and NSF, but courts "are not bound to accept as true a legal conclusion couched as a factual allegation." *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555).  Plaintiff has merely alleged that she had a contract with NSF, which is not a party to this litigation.  As a result, plaintiff's breach of contract claim must be dismissed for failing to state a claim for which relief can be granted.

## IV.    CONCLUSION AND ORDER

For the foregoing reasons, plaintiff has failed to meet her burden to establish that venue for the instant lawsuit is proper in this jurisdiction, and the Court finds that transfer of the claims to the Eastern District of Virginia would not be in the "interest of justice," 28 U.S.C. § 1406(a), because plaintiff "failed to show that [her] claims . . . could properly be heard in any federal court." *Naartex Consulting Corp.*, 722 F.2d at 789.  Accordingly, it is therefore—

**ORDERED** that defendant's Motion to Dismiss or Transfer Venue, ECF No. 17, is **GRANTED**, and it is further

**ORDERED** that plaintiff's Motion for a Hearing, ECF No. 20, is **DENIED** as moot; and it is further

**ORDERED** that this case is **DISMISSED**; and it is further

**ORDERED** that the Clerk of the Court is directed to close this case.

**SO ORDERED.**

Date:  December 21, 2022

_____
BERYL A. HOWELL
Chief Judge